# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

J.P. MORGAN SECURITIES LLC,

                    Plaintiff,

v.

QUINNIPIAC UNIVERSITY,

                    Defendant.

Case No. 14 Civ. 00429_____

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
## J.P. MORGAN SECURITIES LLC'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

Preliminary Statement.................................................................................................1

Statement of Facts......................................................................................................3

Quinnipiac's December 2007 Bond Issuance ............................................................4

Quinnipiac's Purchase Contract With JPMS .............................................................4

Quinnipiac's Broker-Dealer Agreement With JPMS .................................................5

Quinnipiac Was Aware Of Broker-Dealer Support Bidding ......................................6

Quinnipiac's Statement Of Claim ..............................................................................6

Legal Standard ...........................................................................................................7

I.     JPMS Will Suffer Irreparable Harm If The Motion For Preliminary Injunction Is Denied.................................................................................8

II.    JPMS Is Likely To Succeed On The Merits Because The Dispute Is Not Arbitrable Before FINRA. .....................................................................9

      A.     The Forum Selection Clause In The Parties' Broker-Dealer Agreement Requires That The Parties' Dispute Be Brought In Court. ...............10

           1.     The Phrase "Actions and Proceedings" Includes The FINRA Arbitration................................................................................10

           2.     The FINRA Arbitration Arises Out Of The Broker-Dealer Agreement Or The Transactions Contemplated Therein. ..........................12

      B.     In Addressing Similar Forum Selection Language, The Southern District Of New York Has Enjoined Arbitrations Pending In FINRA. .................13

III.    The Balance of Hardships Tips Decidedly Toward JPMS. .............................15

Conclusion ................................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) .................................................................. 11

*Abdul Wali v. Coughlin*, 754 F.2d 1015 (2d Cir. 1985) ........................................................... 10

*Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522 (2d Cir. 2011) ......................................................................................................................... 2, 8, 14

*Biremis, Corp. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, CV-11-4934 (LDW), 2012 WL 760564 (E.D.N.Y. Mar. 8, 2012) ...................................................... 8

*Citigroup Global Mkts., Inc. v. N.C. E. Mun. Power Agency*, No. 13 Civ. 1703(JMF) (S.D.N.Y. May 3, 2013) ............................................................................ 2, 12, 15

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30 (2d Cir. 2010) ..................................................................................... 3, 8, 11

*Goldman, Sachs & Co. v. City of Reno*, No. 12 Civ. 327(RCJ), 2012 WL 5944966 (D. Nev. Nov. 26, 2012) ........................................................................... 16

*Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d 435 (S.D.N.Y. 2013) ............................................................................................... passim

*Goldman, Sachs & Co. v. N.C. Mun. Power Agency No. 1*, No. 13 Civ. 1319(PAC), 2013 WL 6409348 (S.D.N.Y. Dec. 9, 2013) ...................................... 2, 13, 15, 16

*Greenlight Capital, L.P. v. Apple, Inc.*, 13 Civ. 976(RJS), 2013 WL 646547 (S.D.N.Y. Feb. 22, 2013) ................................................................................................ 8

*Int'l Trust Co. of Bermuda, Ltd. v. Fahnestock & Co.*, No. 05 Civ. 3865 (KMW), 1995 WL 606275 (S.D.N.Y. Oct. 12, 1995) ..................................................... 9

*J.P. Morgan Secs Inc. v. La Citizens Property Ins. Corp.*, 712 F. Supp. 2d 70 (S.D.N.Y. 2010) ...................................................................................................... 15

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979) ................................. 8

*Maryland Casualty Co. v. Realty Advisory Board on Labor Relations*, 107 F.3d 979 (2d Cir. 1997) .................................................................................................... 17

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125 (2d Cir. 2003) ........................ 9, 10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ...................... 11

*ProShares Trust v. Schnall*, 695 F. Supp. 2d 76 (S.D.N.Y. 2010) ............................................... 8

Page(s)

*Tellium, Inc. v. Corning Inc.*, No. 03-8487, 2004 WL 307238 (S.D.N.Y. Feb. 13, 2004) ............................................................................................................. 3, 10

*Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408 (S.D.N.Y. 1999) ........................... 17

*UBS Fin. Servs. Inc. v. Carilion Clinic*, 880 F. Supp. 2d 724 (E.D. Va. 2012), *aff'd*, 706 F.3d 319 (4th Cir. 2013) .......................................................... 16

*UBS Financial Services, Inc. v. West Virginia University Hospitals, Inc.*, 660 F.3d 643 (2d Cir. 2011) ......................................................................... 12

*UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351 (S.D.N.Y. 2010)................................. 9

*UBS Secs LLC v. Allina Health System*, No. 12-2090, 2013 WL 500373 (D. Minn. Feb. 11, 2013)........................................................................................ 16

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960) ....................................................................................................... 9

Plaintiff J.P. Morgan Securities LLC ("JPMS") respectfully submits this memorandum of law in support of its motion pursuant to Rule 65(a) of the Federal Rules of Civil Procedure for an order preliminarily enjoining defendant Quinnipiac University ("Quinnipiac") from proceeding with an arbitration that it has filed against JPMS before the Financial Industry Regulatory Authority ("FINRA"), captioned *Quinnipiac University v. J.P. Morgan Securities, LLC*, FINRA Case No. 13-03552 (the "FINRA Arbitration").

## PRELIMINARY STATEMENT

JPMS seeks to enjoin the FINRA Arbitration because it is barred by an exclusive forum selection clause agreed to by JPMS and Quinnipiac.  Specifically, in 2007, the parties executed a Broker-Dealer Agreement in which they specified that "***all actions and proceedings arising out of [the] Broker-Dealer Agreement or any of the transactions contemplated hereby shall be brought in a New York State Court or United States District Court***."  Compl. Ex. 5 (Broker-Dealer Agreement) at 14.  Quinnipiac's claims in the FINRA Arbitration concern allegations pertaining to the issuance of Quinnipiac's auction rate securities ("ARS") and the bids JPMS placed as Quinnipiac's broker-dealer.  The bids at issue were submitted pursuant to the Broker-Dealer Agreement itself, and the securities were issued pursuant to a Bond Purchase Agreement that was expressly contemplated by the Broker Dealer Agreement.  The claims Quinnipiac has asserted in the FINRA Arbitration therefore "aris[e] out of the Broker-Dealer Agreement or any of the transactions contemplated hereby."  Quinnipiac had no basis to commence the FINRA Arbitration, and, accordingly, this Court should grant JPMS's motion and enjoin the arbitration.

In *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, the Second Circuit held that an agreement containing a forum selection clause providing that "any dispute arising out of this Agreement shall be adjudicated in the Supreme Court, New York County or in the

federal district court for the Southern District of New York," required that the parties' claims be resolved in court and not before the NASD (the predecessor to FINRA). 645 F.3d 522 (2d Cir. 2011). The Broker-Dealer Agreement JPMS and Quinnipiac executed contains a forum selection clause similar to that at issue in *Applied Energetics*. Moreover, in three recent cases, the Southern District of New York, relying on strikingly similar forum selection clauses, enjoined FINRA arbitrations concerning the claims of an issuer of ARS against the investment bank that served as underwriter and broker-dealer on the basis that the forum selection clause in the parties' broker-dealer agreement requires the parties to adjudicate their dispute in court. *See Goldman, Sachs & Co. v. N.C. Mun. Power Agency No. 1*, No. 13 Civ. 1319(PAC), 2013 WL 6409348 (S.D.N.Y. Dec. 9, 2013) ("*NCMPA1*"); *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d 435 (S.D.N.Y. 2013) ("*Golden Empire*"); *Citigroup Global Mkts., Inc. v. N.C. E. Mun. Power Agency*, No. 13 Civ. 1703(JMF) (S.D.N.Y. May 3, 2013) (Dkt. No. 30) ("*NCEMPA*").[1] The same result is required here.

Under Second Circuit precedent, a party seeking a preliminary injunction must show irreparable harm and either likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). JPMS's motion for a preliminary injunction satisfies these elements:

---

[1]  The Second Circuit is scheduled to hear appeals in the *Golden Empire* and *NCMPA* cases on April 4, 2013. *See Golden Empire*, 13-cv-797 (2d. Cir. Feb. 3 2014) (Dkt. 92); *NCMPA*, 13-cv-2247 (2d. Cir. Feb. 3 2014) (Dkt. 72). The *NCMPA1* case has been stayed pending the Second Circuit's disposition of those appeals. *See NCMPA1*, 14-cv-64 (2d. Cir. Feb. 6, 2014) (Dkt. 39).

**Irreparable Harm**.  JPMS will be irreparably harmed absent an injunction because requiring a party to arbitrate a dispute that it did not agree to arbitrate "constitutes *per se* irreparable harm." *Tellium, Inc. v. Corning Inc.*, No. 03-8487, 2004 WL 307238, at *3 (S.D.N.Y. Feb. 13, 2004) (internal citation and quotation omitted).  There will be no means to compensate JPMS for the harm it will suffer if it is forced to submit to an arbitral forum absent an agreement to do so.

**Likelihood of Success on the Merits**.  JPMS will ultimately prevail on the merits.  Quinnipiac's claims arise from JPMS's role as broker-dealer for Quinnipiac's ARS, a role that is defined in the parties Broker-Dealer Agreement.  The Broker-Dealer Agreement provides that all disputes arising out of that Agreement—or the transactions contemplated in that Agreement (which include the issuance itself)—must be resolved in court.  Second Circuit precedent supports JPMS's position, and the Southern District of New York has on three recent occasions has enjoined pending FINRA arbitrations on the basis of similar forum selection clauses.

**Balance of Hardships**.  The balance of hardships also favors an injunction. JPMS will be irreparably harmed if forced to arbitrate in a forum in which it did not agree to arbitrate.  In contrast, Quinnipiac will suffer no harm from a preliminary injunction.  At worst, Quinnipiac will be slightly delayed in pursuing claims that it waited nearly six years to bring in the first place.

For all these reasons, and as further set forth below, this Court enter an injunction preliminarily enjoining the FINRA Arbitration.

## STATEMENT OF FACTS

The facts set forth below are based upon the exhibits attached to JPMS's Complaint as well as the exhibits attached to the Declaration of Jonathan K. Youngwood.

Although JPMS does not concede any of the allegations in Quinnipiac's Statement of Claim to be true, certain allegations Quinnipiac asserts are assumed to be true solely for purposes of this motion.

## Quinnipiac's December 2007 Bond Issuance

Quinnipiac is a university with its campus in Hamden, Connecticut.  Compl. Ex. 1 (SOC) ¶ 5.  In 2007, Quinnipiac sought to raise funds to refinance outstanding debt, *id.* ¶ 19, and ultimately issued $116.35 million of ARS.  *Id.* ¶ 1.  The claims Quinnipiac has asserted in the FINRA Arbitration relate to this ARS issuance.

ARS are bonds or preferred securities that pay interest or dividends at rates set at periodic auctions.  *Id.* ¶ 8.  Investors or prospective investors place bids at the auctions, and existing investors may sell securities at auction.  The lowest rate at which there are sufficient bids to purchase all of the securities offered for sale at auction is the "clearing rate," or the rate at which the securities will earn interest until the next auction.  *Id.*  If there are not enough bids to purchase all of the securities offered for sale, the auction "fails," and the securities earn interest until the next auction pursuant to a predetermined "maximum rate" set forth in the bonds' offering documents.  *Id.* ¶ 10.

Issuers of ARS contract with financial institutions to serve as broker-dealers for the ARS.  Compl. Ex. 1 (SOC) ¶ 9.  These broker-dealers are authorized to accept purchase or sell orders from current or prospective ARS investors.  *Id.*  The broker-dealers then submit these orders to the auction agent which, in turn, calculates the interest rate until the next auction.

## Quinnipiac's Purchase Contract With JPMS

JPMS served as the underwriter of Quinnipiac's 2007 bond issuance. Youngwood Decl. Ex. 1 (excerpts from Quinnipiac's Official Statement) at cover.  Pursuant to the Purchase Contract dated December 19, 2007, JPMS agreed to purchase Quinnipiac's bonds

and resell them to the public.  Compl. Ex. 6 (Purchase Contract) at 2.  In negotiating the

Purchase Contract, Quinnipiac was represented by its own counsel, Wiggin & Dana, LLP.  *Id.* at

5-6.  Quinnipiac also received the assistance of bond counsel Pullman & Comley, LLC and

special counsel Shipman & Goodwin LLP.  Youngwood Decl. Ex. 1 (excerpts from Quinnipiac's

Official Statement), at cover.  The Purchase Contract does not provide any right to arbitrate

disputes or claims arising out of the agreement.

**Quinnipiac's Broker-Dealer Agreement With JPMS**

JPMS and Quinnipiac also executed a Broker-Dealer Agreement, dated December

1, 2007.  *See* Compl. Ex. 5 (Broker-Dealer Agreement) at 1.  Pursuant to this contract, JPMS

agreed to serve as the broker-dealer for JPMS's ARS, meaning JPMS had the ability to enter

purchase and sell orders at auction on behalf of investors or potential investors in Quinnipiac's

ARS.  *Id.* at 2-6.  The Broker-Dealer Agreement was also the result of arm's length negotiations

between JPMS and Quinnipiac, which received the assistance of several legal advisors.

The Broker-Dealer Agreement does not provide any right to arbitrate disputes

arising out of the agreement before FINRA.  Rather, the Broker-Dealer agreement has a forum

selection clause that is nearly identical to the forum selection clauses the Southern District of

New York addressed in *NCMPA1*, *Golden Empire*, and *NCEMPA*:

> The parties agree that all actions and proceedings arising out of this Broker-Dealer
> Agreement or any of the transactions contemplated hereby shall be brought in a New
> York State Court or United States District Court, in each case, in the County of New
> York and, in connection with any such actions or proceeding, submit to the jurisdiction
> of, and venue in, such County.

*Id.* at 14.

Similar to the broker-dealer agreements at issue in *NCMPA1*, *Golden Empire*, and

*NCEMPA*, the Broker-Dealer Agreement also contains a merger clause:

This Broker-Dealer Agreement, and the other agreements and instruments executed and delivered in connection with the issuance of the Bonds, contain the entire agreement between the parties relating to the subject matter hereof, and there are no other representations, endorsements, promises, agreements or understandings, oral, written or inferred, between the parties relating to the subject matter hereof.

*Id.* at 13.

## Quinnipiac Was Aware Of Broker-Dealer Support Bidding

Notwithstanding any allegations is now asserts, Quinnipiac was always aware that there was a possibility of auction failures and that JPMS, as broker-dealer, could place bids to prevent auctions failures, but that there was no guarantee that JPMS would do so. For example, Quinnipiac disclosed to investors:

> Bidding by Broker-Dealer. ***The Broker-Dealer is permitted, but not obligated, to submit Orders in Auctions for the Series K Bonds for its own account*** either as a buyer or seller and ***routinely does so*** in the auction rate securities market in ***its sole discretion***. Youngwood Decl. Ex. 1 (excerpts from Quinnipiac's Official Statement) at 16 (emphasis added).

> ***The Broker-Dealer routinely places bids in auctions generally for its own account to acquire securities for its inventory, to prevent an "Auction Failure"*** (which occurs if there are insufficient clearing bids and results in the auction rate being set at the maximum rate) ***or to prevent an auction from clearing at a rate that the Broker-Dealer believes does not reflect the market for such securities***. *Id.* (emphasis added).

## Quinnipiac's Statement Of Claim

On December 3, 2013, Quinnipiac filed its Statement of Claim. Quinnipiac alleges that, notwithstanding the fact that JPMS was not Quinnipiac's financial advisor, Quinnipiac's decision to issue $116.35 was made "[p]ursuant to JPM's recommendation" and that JPMS "failed to disclose serious and pervasive risks." Compl. Ex. 1 (SOC) ¶ 1. Specifically, Quinnipiac contends that JPMS "failed to disclose its knowledge of the increasing risks that its support bids were propping up the ARS market, and were necessary to achieve the represented interest payments and functionality of the synthetic fixed rate." *Id.* ¶ 2. Quinnipiac further alleges that "[o]n or about February 12, 2008, JPM decided to stop submitting support

bids for almost all of its lead broker-dealer auctions in the municipal ARS market" and that "Quinnipiac's ARS began to clear over 10% when the SIFMA variable rate hovered around 2% and fixed rates were approximately 4%-5%." *Id.* ¶ 30.

Quinnipiac asserts five counts: (1) breach of fiduciary duty; (2) violation of FINRA Rules, breach of contract and negligence; (3) negligent supervision; (4) fraud; and (5) negligent misrepresentation. *Id.* at 14-19. Quinnipiac's Statement of Claim seeks actual, compensatory, punitive, and consequential damages, along with restitution and disgorgement of fees, and costs. *Id.* at 19. Quinnipiac alleges that it is entitled to arbitrate the dispute because it "procured and paid for JPM's services as underwriter and broker-dealer and this dispute arises from the business activities of JPM, including, but not limited to, underwriting and broker-dealer activities." *Id.* ¶ 7.

The FINRA Arbitration is only at its initial stages, and no panel has been appointed. Although JPMS's response to Quinnipiac's Statement of Claim was initially due January 29, 2014, the parties have agreed to delay the deadline for JPMS to submit its answer pending resolution of this matter.

## LEGAL STANDARD

In the Second Circuit, a party seeking a preliminary injunction must establish "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *VCG*, 598 F.3d at 35 (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). The "likelihood of success" element requires only that the plaintiff convince the Court that it is more likely than not—that is a greater than fifty percent chance—that it will succeed on its claims.

*Greenlight Capital, L.P. v. Apple, Inc.*, 13 Civ. 976(RJS), 2013 WL 646547, at *4 (S.D.N.Y. Feb. 22, 2013).

Federal courts in this Circuit routinely enjoin FINRA arbitrations (or deny motions to compel FINRA arbitrations) rather than require a party to submit to an arbitration where it has not agreed to do so. *See, e.g. Applied Energetics*, 645 F.3d at 526; *Biremis, Corp. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, CV-11-4934 (LDW), 2012 WL 760564, at *5 (E.D.N.Y. Mar. 8, 2012); *ProShares Trust v. Schnall*, 695 F. Supp. 2d 76, 79-80 (S.D.N.Y. 2010). In fact, the Southern District of New York has recently addressed this precise issue regarding whether a forum selection clause in a broker-dealer agreement requires that the parties litigate their ARS-dispute in court rather than FINRA on three separate occasions. In each case—*NCMPA1*, *Golden Empire*, and *NCEMPA*—the Southern District of New York held that the FINRA arbitration should be enjoined.

## I. JPMS WILL SUFFER IRREPARABLE HARM IF THE MOTION FOR PRELIMINARY INJUNCTION IS DENIED.

JPMS will suffer irreparable harm unless the Court enjoins Quinnipiac from proceeding with the FINRA Arbitration. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *see also Int'l Trust Co. of Bermuda, Ltd.* v. *Fahnestock & Co.*, No. 05 Civ. 3865 (KMW), 1995 WL 606275, at *3 (S.D.N.Y. Oct. 12, 1995) ("A party that has not agreed to arbitrate a dispute will suffer irreparable harm if [] forced to submit to arbitration."). As a matter of law, there is irreparable harm when a party is "compelled to arbitrate . . . without having agreed to arbitration" because that party is "'forced to expend time and resources arbitrating an issue that is not arbitrable . . . .'" *UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010) (quoting *Merrill Lynch*

*Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003)).  "[I]t is not merely expense that underlies the prohibition against forcing a party to arbitrate a dispute that it did not agree to arbitrate," but also the concern that a party will "lose its right to have [its] claim adjudicated in a court of law, rather than an arbitral forum to whose jurisdiction it has not consented." *Id.*

"Compelling arbitration of a matter not properly subject to arbitration constitutes '*per se* irreparable harm.'" *Tellium*, 2004 WL 307238, at *3.  Because JPMS will be compelled to arbitrate a matter that is not properly subject to arbitration, JPMS will suffer irreparable harm if the motion for a preliminary injunction is denied.

## II.    JPMS IS LIKELY TO SUCCEED ON THE MERITS BECAUSE THE DISPUTE IS NOT ARBITRABLE BEFORE FINRA.

A party seeking a preliminary injunction "need not show that success is an absolute certainty.  [The movant] need only make a showing that the probability of [its] prevailing is better than fifty percent.  There may remain considerable room for doubt." *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985).  Here, the issue is whether JPMS is likely to succeed in establishing that the forum selection clause in the parties' Broker-Dealer Agreement precludes the parties' dispute from being decided in arbitration.  On three separate occasions, the Southern District of New York, relying on applicable Second Circuit precedent, has addressed similar applications, each time ruling that the litigants' pending FINRA arbitration should be enjoined.  Because the language in Broker-Dealer Agreement's forum selection clause provides that disputes will be brought in a court in New York County, JPMS is likely to succeed on the merits.

**A.    The Forum Selection Clause In The Parties' Broker-Dealer Agreement Requires That The Parties' Dispute Be Brought In Court.**

Quinnipiac and JPMS unequivocally agreed that "all actions and proceedings" arising out of Quinnipiac's 2007 ARS issuance would be decided in court.  The Broker-Dealer Agreement expressly provides:

> The parties agree that *all actions and proceedings arising out of this Broker-Dealer Agreement or any of the transactions contemplated hereby shall be brought in a New York State Court or United States District Court, in each case, in the County of New York* and, in connection with any such action or proceeding, submit to the jurisdiction of, and venue in, such County.

Compl. Ex. 5 (Broker-Dealer Agreement) at 14 (emphasis added).  Because the FINRA Arbitration is an "action" or "proceeding" that "arises out of this Broker-Dealer Agreement or any of the transactions contemplated hereby," the forum selection clause requires that Quinnipiac's claims be brought in court.

**1.    The Phrase "Actions and Proceedings" Includes The FINRA Arbitration.**

The FINRA Arbitration constitutes an "action" or "proceeding."  Quinnipiac acknowledges this in its own Statement of Claim in which it requests, "after due *proceedings*" that Quinnipiac be awarded "[t]he costs of prosecuting this *action*."  Compl. Ex. 1 (SOC) at 19 (emphasis added).  Moreover, FINRA's own rules describe FINRA arbitrations as "proceedings."  *See* FINRA R. 12208 ("At any stage of an arbitration *proceeding* held in a United States hearing location, all parties shall have the right to be represented by an attorney.") (emphasis added).

Courts also refer to arbitrations as "actions" or "proceedings."  In *14 Penn Plaza LLC v. Pyett*, the United States Supreme Court referred to an arbitration panel as an "arbitral body conducting a *proceeding*."  556 U.S. 247, 269 (2009) (emphasis added) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634 (1985)).  The Second Circuit

in *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, recited the facts of the case presented by noting "VCG began arbitration ***proceedings*** against CGMI before the FINRA pursuant to FINRA Rule [§] 12200." 598 F.3d at 32 (emphasis added). The Second Circuit's decision in *UBS Financial Services, Inc. v. West Virginia University Hospitals, Inc.*, 660 F.3d 643 (2d Cir. 2011) ("*WVUH*"), provides further support for the proposition that the phrase "all actions and proceedings" includes arbitration. In *WVUH*, the Second Circuit affirmed the denial of the plaintiff's motion to enjoin a FINRA arbitration brought by an issuer of ARS, holding that the interpretation of the forum selection clause applicable to "all actions and proceedings" was a procedural issue for the arbitrators to decide. *Id.* at 654-55. In its opinion, the Second Circuit expressed no doubt that an arbitration was an "action" or "proceeding" that fell within the scope of the provision at issue. *See NCEMPA*, Dkt. No. 30 (64:6-23) ("[T]he [Second Circuit] expressed no doubt whatsoever than an arbitration—the arbitration, itself—was within the scope of that provision; namely, was an 'action or proceeding' and left the question as to whether it arose out of the agreement and the like to the arbitrator to decide. It didn't seem to find any doubt that it would otherwise fall within the provision.").

The three recent Southern District cases that have addressed similar forum selection clauses have all held that a FINRA arbitration is encompassed within the phrase "all actions and proceedings." In *Golden Empire*, Judge Sullivan expressly rejected any argument that an arbitration was not an "action" or "proceeding," holding that such an argument "strains reason." *Golden Empire*, 922 F. Supp. 2d at 442. Judge Furman agreed in the *NCEMPA* case, stating that "the more natural reading of the phrase 'actions and proceedings' . . . includes arbitrations." *NCEMPA*, Dkt. No. 30 (62:19 - 64:21). In *NCMPA1*, Judge Crotty reached the same conclusion, holding that a FINRA arbitration was an "action" or "proceeding" as

"limit[ing] 'actions' and 'proceedings' to judicial actions would run contrary to the plain and commonly accepted meaning of these terms." *NCMPA1*, 2013 WL 6409348, at *6.

### 2. The FINRA Arbitration Arises Out Of The Broker-Dealer Agreement Or The Transactions Contemplated Therein.

The FINRA Arbitration "aris[es] out of this Broker-Dealer Agreement or any of the transactions contemplated hereby." Quinnipiac's Statement of Claim is based on JPMS's alleged failure to disclose its practice of placing support bids in ARS auctions. *See* Compl. Ex. 1 (SOC) ¶ 2 ("JPM failed to disclose its knowledge of the increasing risks that its support bids were propping up the ARS market . . ."). JPMS placed bids in Quinnipiac's ARS auctions pursuant to its responsibilities as broker-dealer, a relationship governed by the Broker-Dealer Agreement. In fact, in its Statement of Claim, Quinnipiac expressly states that its claims "arise[] from the business activities of JPM, including, but not limited to, underwriting and broker-dealer activities." *Id.* ¶ 7. Quinnipiac's contention that its claims arise out of JPMS's role as underwriter as well as JPMS's role as broker-dealer does not limit the applicability of the forum selection clause in the Broker-Dealer Agreement, as the clause captures actions and proceedings "arising out of this Broker-Dealer Agreement or ***any of the transactions contemplated hereby***." Compl. Ex. 5 (Broker-Dealer Agreement) at 14 (emphasis added). Actions JPMS took as Quinnipiac's underwriter during the issuance of Quinnipiac's ARS are clearly "transactions contemplated" by the Broker-Dealer Agreement, as the recitals in the Broker-Dealer Agreement expressly reference Quinnipiac's issuance of ARS. Compl. Ex. 5 (Broker-Dealer Agreement) at 1 ("WHEREAS, the State of Connecticut Health and Education Facilities Authority (the 'Issuer') is issuing $116,350,000 in aggregate principal amount . . .").

In *Applied Energetics*, NewOak Capital Markets brought an NASD arbitration[2] against Applied Energetics, alleging that Applied Energetics knowingly disseminated materially false information about its development of a military vehicle.  The parties had entered into two agreements: an Engagement Agreement and a Placement Agreement.  The Engagement Agreement specified that the parties' disputes would be resolved through NASD arbitration. *Applied Energetics*, 645 F.3d at 523.  The parties then entered into a subsequent agreement, the Placement Agreement, which stated that "[a]ny dispute arising out of this Agreement shall be adjudicated in the Supreme Court, New York County or in the federal district court for the Southern District of New York."  *Id.*   Relying on the Placement Agreement's forum selection clause, Applied Energetics brought suit to enjoin the NASD arbitration NewOak Capital Markets had filed.  Noting that "contracting parties are free to revoke an earlier agreement to arbitrate by executing a subsequent agreement the terms of which plainly preclude arbitration," the Second Circuit held that the NASD arbitration could not proceed. *Id.* at 525.

Similar to the forum selection clause in *Applied Energetics*, the forum selection clause in the Broker-Dealer Agreement JPMS and Quinnipiac executed "plainly preclude[s] arbitration." *Id.*   Because the FINRA Arbitration is an "action" or "proceeding" that "aris[es] out of this Broker-Dealer Agreement or any of the transactions contemplated hereby," the dispute must be "brought in a New York State Court or United States District Court, in each case, in the County of New York." Compl. Ex. 5 (Broker-Dealer Agreement) at 14.

**B.     In Addressing Similar Forum Selection Language, The Southern District Of New York Has Enjoined Arbitrations Pending In FINRA.**

On three recent occasions, the Southern District of New York has evaluated ARS broker-dealers' requests to enjoin FINRA arbitrations brought by ARS issuers on the basis that

---

[2]     NASD was a predecessor organization to what is now known as FINRA.

such arbitrations are precluded by the forum selection clauses in the parties' agreements.  In all three cases, the Court enjoined the FINRA arbitration.  *See Golden Empire*, 922 F. Supp. 2d at 445; *NCMPA1*, 2013 WL 6409348, at *9; *NCEMPA*, No. 13 Civ. 1703(JMF) (Dkt. No. 30).  Following the lead of these three decisions, this Court should enjoin the FINRA Arbitration Quinnipiac has filed against JPMS.[3]

Each of the previous three cases involved facts nearly identical to those presented here: an ARS issuer brought an arbitration in FINRA against the investment bank that served as its underwriter and broker-dealer, alleging that the investment bank failed to disclose its practice of placing support bids in ARS auctions.  In each case, the Court confronted a forum selection clause substantively similar to the one presented here:

> The parties agree that all actions and proceedings arising out of this Broker-Dealer Agreement or any of the transactions contemplated hereby shall be brought in the United States District Court in the County of New York and that, in connection with any such action or proceeding, subject to the jurisdiction of, and venue in, such court.

*NCMPA1*, 2013 WL 6409348, at *2; *Golden Empire*, 922 F. Supp. 2d at 438; *NCEMPA*, Dkt. No. 30 (55:17-55:22).  The only difference between the forum selection clauses at issue in these three previous cases and the forum selection clause presented here is that, for the forum selection clause here, the dispute can be brought in a New York State Court located in New York County in addition to the United States District Court.  As such, there is no distinction that would permit Quinnipiac's claims to be asserted in FINRA.

---

[3]   As noted above, all three of these orders have been appealed to the Second Circuit.  In addition to these three cases, the Southern District of New York denied a motion to enjoin a FINRA arbitration in *J.P. Morgan Secs Inc. v. La. Citizens Property Ins. Corp.*, 712 F. Supp. 2d 70 (S.D.N.Y. 2010).  However, that case occurred prior to the Second Circuit's ruling in *Applied Energetics* and did not address the issue of whether a forum selection clause precluded arbitration.

In deciding to enjoin the FINRA arbitrations at issue in *NCMPA1*, *Golden Empire*, and *NCEMPA*, the Southern District of New York evaluated several arguments against the issuance of a preliminary injunction.  These arguments included: (1) that Section 4 of the FAA prohibited the Court from enjoining an arbitration pending in another district; (2) that FINRA Rule 12200 must be construed liberally to effectuate the purposes of the FAA; (3) that the waiver of arbitration must be explicit for a later agreement to revoke an earlier agreement; (4) that a FINRA arbitration is not an "action" or "proceeding;" (5) that disputes concerning the underwriting of the bonds are separate from disputes arising under the broker-dealer agreements; and (6) that an injunction would not be in the public interest because there is a federal policy favoring arbitration.  The ARS issuers' arguments, however, were all rejected.  *See NCMPA1*, 2013 WL 6409348, at \*3-9; *Golden Empire*, 922 F. Supp. 2d at 439-44; *NCEMPA*, Dkt. No. 30 (59:15-68:18).[4]

## III.    THE BALANCE OF HARDSHIPS TIPS DECIDEDLY TOWARD JPMS.

"The balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Golden Empire*, 922 F. Supp. 2d at 444 (quoting *Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 411 (S.D.N.Y.

---

[4]    Several courts outside this Circuit have denied motions seeking to enjoin FINRA proceedings in ARS-related matters.  *See Goldman, Sachs & Co. v. City of Reno*, No. 12 Civ. 327(RCJ), 2012 WL 5944966 (D. Nev. Nov. 26, 2012); *UBS Fin. Servs. Inc. v. Carilion Clinic*, 880 F. Supp. 2d 724 (E.D. Va. 2012), *aff'd*, 706 F.3d 319 (4th Cir. 2013); *UBS Secs LLC v. Allina Health System*, No. 12-2090 (MJD/JJG), 2013 WL 500373 (D. Minn. Feb. 11, 2013).  The *Reno* case is on appeal before the Ninth Circuit.  The *Allina* decision was appealed to the Eighth Circuit, but before briefing was completed, the parties agreed to move the dispute to AAA pursuant to a specific provision in the Bond Purchase Agreement.  *See* Youngwood Decl. Ex. 2 (*UBS Secs LLC v. Allina Health System* stipulation of dismissal).  In granting requests to preliminary enjoin FINRA arbitrations, the Southern District of New York has considered the reasoning of several of these previous decisions, finding these other courts' decisions to be incompatible with the Second Circuit's precedent in *Applied Energetics*.  *See Golden Empire*, 922 F. Supp. 2d at 441; *NCEMPA*, Dkt. No. 30 (60:24-61:19).

1999)).  Here, JPMS would "suffer most grievously" should this Court not enjoin the FINRA Arbitration.

If the FINRA Arbitration were to proceed, JPMS would be "forced to expend time and resources arbitrating an issue that is not arbitrable." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (quoting *Maryland Casualty Co. v. Realty Advisory Board on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997)).  By contrast, any potential hardship on Quinnipiac is minimal given JPMS will likely demonstrate that Quinnipiac is not entitled to arbitration. *See NCMPA1*, 2013 WL 6409348, at *8.  Furthermore, because Quinnipiac has waited nearly six years to bring this arbitration, any suggestion that a delay would harm Quinnipiac is specious. *See id.*; *Golden Empire*, 922 F. Supp. 2d at 444.  Accordingly, the balance of hardships tips decidedly toward JPMS.

## CONCLUSION

For the foregoing reasons, JPMS respectfully requests that this Court issue an order preliminarily enjoining Quinnipiac from pursuing its claims in the FINRA Arbitration.


Dated:  February 14, 2014              By:  _____

                                            Jonathan K. Youngwood
                                            SIMPSON THACHER & BARTLETT LLP
                                            425 Lexington Avenue
                                            New York, NY 10017-3954
                                            (212) 455-3539

                                            *Attorneys for Plaintiff J.P. Morgan Securities, LLC*

**CERTIFICATE OF SERVICE**

I, Peter Hartofilis, hereby certify under the penalty of perjury that on

February 14, 2014, I  personally served a true and correct copy of the attached:

### - NOTICE OF MOTION FOR PRELIMINARY INJUNCTION

### - DECLARATION OF JONATHAN K. YOUNGWOOD

### - MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF J.P. MORGAN SECURITIES LLC'S MOTION FOR PRELIMINARY INJUNCTION

By Federal Express Overnight Delivery upon:

Joseph C. Peiffer
Peiffer Rosca Abdullah & Carr
201 St. Charles Ave.
Suite 4610
New Orleans, LA 70170

Dated:  New York, New York
          February 14, 2014

Peter Hartofilis