**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| J.P. MORGAN SECURITIES LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 14 Civ. 00429 (PAE) |
| v. | : | |
| | : | |
| QUINNIPIAC UNIVERSITY, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |
| _____ | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF**
**J.P. MORGAN SECURITIES LLC'S MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

PROCEDURAL HISTORY .................................................................................................. 4

STATEMENT OF FACTS ................................................................................................... 5

LEGAL STANDARD .......................................................................................................... 8

I.   JPMS WILL SUFFER IRREPARABLE HARM IF THE MOTION FOR
     PRELIMINARY INJUNCTION IS DENIED.................................................................. 9

II.  JPMS IS LIKELY TO SUCCEED ON THE MERITS BECAUSE THE DISPUTE
     IS NOT ARBITRABLE BEFORE FINRA. ................................................................. 10

     A.   Second Circuit Precedent Establishes That This Dispute Cannot Be
          Adjudicated In FINRA Arbitration. ...................................................................... 11

     B.   A Plain Reading Of The Forum Selection Clause Establishes That The
          Dispute Between Quinnipiac And JPMS Must Be Brought In Court. ................. 12

          1.   "Actions and Proceedings" Includes The FINRA Arbitration. ................. 13

          2.   The Parties' Dispute Arises Out Of The Broker-Dealer Agreement
               Or The Transactions Contemplated Therein. ........................................... 13

III. THE BALANCE OF HARDSHIPS TIPS DECIDEDLY TOWARD JPMS. .................... 14

CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdul Wali v. Coughlin*, 754 F.2d 1015 (2d Cir. 1985) .................................................................11

*Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522 (2d
    Cir. 2011)....................................................................................................................10, 17

*Baker & Taylor, Inc. v. AlphaCraze.com Corp.*, 602 F.3d 486 (2d Cir.
    2010)......................................................................................................................................17

*Biremis, Corp. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. CV-11-
    4934 (LDW), 2012 WL 760564 (E.D.N.Y. Mar. 8, 2012)....................................................10

*Citigroup Global Mkts. Inc. v. All Children's Hosp., Inc.*, 5 F. Supp. 3d
    537 (S.D.N.Y. 2014)................................................................................................................9

*Citigroup Global Mkts., Inc. v. Mun. Elec. Auth. of Ga.*, No. 14 Civ. 2903
    (AKH), 2014 WL 3858509 (S.D.N.Y. June 18, 2014)..........................................................10

*Citigroup Global Mkts., Inc. v. N. C. E. Mun. Power Agency*, No. 13-cv-
    1703 (JMF) (S.D.N.Y. May 10, 2013) ...................................................................................9

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund,
    Ltd.*, 598 F.3d 30 (2d Cir. 2010)........................................................................................3, 8

*Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014) .......................................13

*Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210
    (2d Cir. 2014) .................................................................................................................passim

*Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 922 F. Supp. 2d
    435 (S.D.N.Y. 2013)..........................................................................................................9, 16

*Goldman, Sachs & Co. v. N. C. Mun. Power Agency No. 1*, No. 13-cv-
    1319(PAC), 2013 WL 6409348 (S.D.N.Y. Dec. 9, 2013) .....................................................9

*Greenlight Capital, L.P. v. Apple, Inc.*, Nos. 13 Civ. 900(RJS), 13 Civ.
    976(RJS), 2013 WL 646547 (S.D.N.Y. Feb. 22, 2013) ........................................................9

*In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113 (2d Cir. 2011)..................................17

*Int'l Trust Co. of Bermuda, Ltd. v. Fahnestock & Co.*, No. 95 Civ. 3865
    (KMW), 1995 WL 606275 (S.D.N.Y. Oct. 12, 1995)..........................................................10

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979) .................................8

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125 (2d Cir. 2003) .................................................................................................................11, 16

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Georgiadis*, 903 F.2d 1092 (2d Cir. 1990) .............................................................................................17

*ProShares Trust v. Schnall*, 695 F. Supp. 2d 76 (S.D.N.Y. 2010) ...............................10

*Tellium, Inc. v. Corning Inc.*, No. 03 Civ. 8487(NRB), 2004 WL 307238 (S.D.N.Y. Feb. 13, 2004) ....................................................................................4, 11

*Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408 (S.D.N.Y. 1999) .............................16

*UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351 (S.D.N.Y. 2010) .................................11

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960) ....................................................................................................10

**Statutes**

Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. 111-203, 124 Stat. 1376 .............................................................................15

Fed. R. Civ. P. 65(a) ........................................................................................................1

FINRA Rule 12200.................................................................................................passim

FINRA Rule 12208.........................................................................................................13

Securities Exchange Act of 1934, Pub. L. 73-291, 48 Stat. 881 ...................................15

Plaintiff J.P. Morgan Securities LLC ("JPMS") respectfully submits this memorandum of law in support of its motion pursuant to Rule 65(a) of the Federal Rules of Civil Procedure for an order preliminarily enjoining defendant Quinnipiac University ("Quinnipiac") from proceeding with an arbitration it has filed against JPMS before the Financial Industry Regulatory Authority ("FINRA"), captioned *Quinnipiac University v. J.P. Morgan Securities, LLC*, FINRA Case No. 13-03552 (the "FINRA Arbitration").

## PRELIMINARY STATEMENT

JPMS seeks to enjoin the FINRA Arbitration because, as the Second Circuit has held regarding a substantially similar contractual provision, an exclusive forum selection clause agreed to by JPMS and Quinnipiac mandates that the parties' dispute be adjudicated in court. JPMS initially filed a motion for a preliminary injunction on February 14, 2014. The issues presented in JPMS's motion were substantially similar to the issues presented in appeals pending before the Second Circuit captioned *Goldman, Sachs & Co. v. Golden Empire Schools Financing Authority* (13-797) and *Citigroup Global Markets, Inc. v. North Carolina Eastern Municipal Power Agency* (13-2247). In those two appeals, the Second Circuit addressed decisions of this Court preliminarily enjoining similar FINRA arbitrations in which issuers of auction rate securities ("ARS") brought claims against the investment banks that served as underwriters and broker-dealers for their bond issuances. In both cases, the United States District Court for the Southern District of New York enjoined the pending FINRA arbitrations because forum selection clauses precluded arbitration of the dispute. On March 10, 2014, this Court entered an order staying all proceedings in this matter pending issuance of the Second Circuit's mandate resolving the appeals. On August 21, 2014, the Second Circuit issued a single opinion resolving both appeals, affirming the underlying District Court decisions and holding that the parties' disputes were not arbitrable because the forum selection clauses in the parties' broker-dealer agreements

superseded FINRA rules requiring arbitration and mandated that the parties' disputes be adjudicated in court. *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210 (2d Cir. 2014) ("*Golden Empire*"). The Second Circuit issued its mandate in *Golden Empire* on March 18, 2015. Accordingly, the stay of proceedings in this matter has expired, and it is now appropriate for this case to proceed and the FINRA Arbitration to be enjoined.

This motion is based on an exclusive forum selection clause agreed to by JPMS and Quinnipiac substantially similar to the forum selection clauses the Second Circuit addressed in *Golden Empire*. The forum selection clauses at issue in *Golden Empire* stated:

> The parties agree that all actions and proceedings arising out of this Broker-Dealer Agreement or any of the transactions contemplated hereby shall be brought in the United States District Court in the County of New York and that, in connection with any such action or proceeding, submit to the jurisdiction of, and venue in, such court.

*Id.* at 212. The forum selection clause Quinnipiac and JPMS executed in their 2007 Broker-Dealer Agreement is substantially similar:

> The parties agree that all actions and proceedings arising out of this Broker-Dealer Agreement or any of the transactions contemplated hereby shall be brought in a New York State Court or United States District Court, in each case, in the County of New York and, in connection with any such action or proceeding, submit to the jurisdiction of, and venue in, such County.

Compl. Ex. 5 (Broker-Dealer Agreement) at 14. The only difference is that the forum selection clause the Second Circuit addressed in *Golden Empire* provides that actions and proceedings must be brought in the federal court in New York County, while the forum selection clause in the parties' 2007 Broker-Dealer Agreement provides that actions and proceedings must be brought in either the state or federal court in New York County. Adjudicating disputes in FINRA's forum for conducting arbitrations is not permitted.

In bringing the FINRA Arbitration, Quinnipiac has demanded that JPMS submit to arbitration on the basis of FINRA Rule 12200. FINRA Rule 12200 provides that FINRA

members, such as JPMS, "must arbitrate a dispute" if arbitration is "[r]equested by the customer"
and "[t]he dispute arises in connection with the business activities of the member."  FINRA R.
12200.  In *Golden Empire*, the Second Circuit held that "the FINRA arbitration rules [are]
superseded by forum selection clauses requiring 'all actions and proceedings' related to the
transactions between the parties to be brought in court."  764 F.3d at 212.  Because the forum
selection clause in the parties' 2007 Broker-Dealer Agreement superseded Quinnipiac's right to
request arbitration under FINRA Rule 12200, Quinnipiac had no basis to commence the FINRA
Arbitration.  Accordingly, this Court should grant JPMS's motion and enjoin the arbitration.

      The Second Circuit has established that a party seeking a preliminary injunction
must show irreparable harm and either likelihood of success on the merits or sufficiently serious
questions going to the merits to make them a fair ground for litigation and a balance of hardships
tipping decidedly toward the party requesting the preliminary relief.  *Citigroup Global Mkts.,
Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).  JPMS's
motion for a preliminary injunction satisfies these elements:

      **Irreparable Harm**.  JPMS will be irreparably harmed absent an injunction
because requiring a party to arbitrate a dispute that it did not agree to arbitrate "constitutes per se
irreparable harm."  *Tellium, Inc. v. Corning Inc.*, No. 03 Civ. 8487(NRB), 2004 WL 307238, at
*3 (S.D.N.Y. Feb. 13, 2004) (internal citation and quotation omitted).  There will be no means to
compensate JPMS for the harm it will suffer if it is forced to submit to an arbitral forum absent
an agreement to do so.

      **Likelihood of Success on the Merits**.  JPMS will ultimately prevail on the
merits.  Quinnipiac's claims arise from JPMS's role as broker-dealer for Quinnipiac's ARS, a
role that is defined in the parties' Broker-Dealer Agreement.  The Broker-Dealer Agreement

provides that all disputes arising out of that Agreement or the transactions contemplated in that Agreement must be resolved in court. Quinnipiac's claims in the FINRA Arbitration concern allegations pertaining to the issuance of Quinnipiac's ARS and the bids JPMS placed as Quinnipiac's broker-dealer. The ARS issuance is expressly referenced in the Broker-Dealer Agreement, and the bids at issue were submitted pursuant to the terms of the Broker-Dealer Agreement. Furthermore, in *Golden Empire*, the Second Circuit affirmed the enjoining of pending FINRA arbitrations brought by ARS issuers on the basis of substantially similar forum selection clauses.

**Balance of Hardships**. The balance of hardships also favors an injunction. JPMS will be irreparably harmed if forced to arbitrate in a forum in which it did not agree to arbitrate. In contrast, Quinnipiac will suffer no harm from a preliminary injunction. Quinnipiac waited nearly six years to bring its claims in the first place and then agreed to a stay pending the issuance of the Second Circuit's mandate in *Golden Empire*.

### PROCEDURAL HISTORY

Quinnipiac commenced the FINRA Arbitration upon the filing of its Statement of Claim dated December 3, 2013. Compl. ¶ 2; Compl. Ex. 1. On January 23, 2014, JPMS filed its complaint to commence this action in the Southern District of New York, and the parties agreed to stay the deadline for JPMS to submit its answer in the FINRA Arbitration. *See J.P. Morgan Securities LLC v. Quinnipiac University*, No. 14 Civ. 429(PAE), ECF No. 2. JPMS filed an initial motion for a preliminary injunction on February 14, 2014. *Id.*, ECF Nos. 5-7. On March 5, 2014, the Court established a briefing schedule for JPMS's motion. *Id.*, ECF No. 8. The following day, Quinnipiac's counsel—writing on behalf of both Quinnipiac and JPMS—requested that the Court adjourn the existing deadlines and enter a proposed scheduling order accompanying the letter. *Id.*, ECF No. 10. On March 10, 2014, the Court entered the proposed

scheduling order, staying all proceedings in this action pending issuance of the Second Circuit's mandate in *Golden Empire*. *Id.*, ECF No. 11. On April 7, 2014, the Court directed the Clerk of Court to place this case on the suspense docket. *Id.*, ECF No. 13. On August 4, 2014, the Court, noting that JPMS's motion for a preliminary injunction had been stayed and that this case had been placed on the suspense docket, directed the Clerk of Court to terminate JPMS's pending motion. *Id.*, ECF No. 14. On August 21, 2014, the Second Circuit issued its opinion in the *Golden Empire* case, and on March 18, 2015, the Second Circuit issued its mandate.

## STATEMENT OF FACTS

The facts set forth below are based upon the exhibits attached to JPMS's complaint, including the Statement of Claim Quinnipiac filed in the FINRA Arbitration.

**Quinnipiac's December 2007 Bond Issuance**

Quinnipiac is a university with its campus in Hamden, Connecticut. Compl. Ex. 1 (SOC) ¶ 5. In 2007, Quinnipiac sought to raise funds to refinance outstanding debt, *id.* ¶ 19, and ultimately issued $116.35 million of ARS. *Id.* ¶ 1. The claims Quinnipiac has asserted in the FINRA Arbitration relate to this ARS issuance.

ARS are bonds or preferred securities that pay interest or dividends at rates set at periodic auctions. *Id.* ¶ 8. Investors or prospective investors place bids at the auctions, and existing investors may sell securities at the auctions. The lowest rate at which there are sufficient bids to purchase all of the securities offered for sale at auction is the "clearing rate," or the rate at which the securities will earn interest until the next auction. *Id.* If there are not enough bids to purchase all of the securities offered for sale, the auction "fails," and the securities earn interest until the next auction pursuant to a predetermined "maximum rate" set forth in the bonds' offering documents. *Id.* ¶ 10.

Issuers of ARS contract with financial institutions to serve as broker-dealers for the ARS. *Id.* ¶ 9. These broker-dealers are authorized to accept purchase and sell orders from current or prospective ARS investors. *Id.* The broker-dealers then submit these orders to the auction agent which, in turn, calculates the interest rate until the next auction.

**Quinnipiac's Broker-Dealer Agreement With JPMS**

In connection with its 2007 ARS issuance, JPMS and Quinnipiac executed a Broker-Dealer Agreement dated December 1, 2007. *See* Compl. Ex. 5 (Broker-Dealer Agreement) at 1. Pursuant to this contract, JPMS agreed to serve as the broker-dealer for Quinnipiac's ARS, meaning JPMS had the ability to enter purchase and sell orders at auction on behalf of investors or potential investors in Quinnipiac's ARS. *Id.* at 2-6.

The Broker-Dealer Agreement does not provide any right to arbitrate disputes arising out of the agreement before FINRA. Rather, the Broker-Dealer agreement has a forum selection clause that is substantially similar to the forum selection clauses the Second Circuit addressed in *Golden Empire*. The forum selection clause in the 2007 Broker-Dealer Agreement states:

> The parties agree that all actions and proceedings arising out of this Broker-Dealer Agreement or any of the transactions contemplated hereby shall be brought in a New York State Court or United States District Court, in each case, in the County of New York and, in connection with any such action or proceeding, submit to the jurisdiction of, and venue in, such County.

*Id.* at 14.

Similar to the broker-dealer agreements at issue in *Golden Empire*, the Broker-Dealer Agreement JPMS and Quinnipiac executed also contains a merger clause:

> This Broker-Dealer Agreement, and the other agreements and instruments executed and delivered in connection with the issuance of the Bonds, contain the entire agreement between the parties relating to the subject matter hereof, and there are no other representations, endorsements, promises, agreements or understandings, oral, written or inferred, between the parties relating to the subject matter hereof.

*Id.* at 13.

## Quinnipiac's Statement Of Claim

In its Statement of Claim, Quinnipiac demands that JPMS submit to arbitration pursuant to FINRA Rule 12200, which states that FINRA members—such as JPMS—"must arbitrate a dispute" if arbitration is "[r]equested by the customer" and "[t]he dispute arises in connection with the business activities of the member."  FINRA R. 12200; Compl. Ex. 1 (SOC) ¶ 7.  Quinnipiac's Statement of Claim alleges that, notwithstanding the fact that JPMS was not Quinnipiac's financial advisor, Quinnipiac's decision to issue $116.35 million  in ARS was made "[p]ursuant to JPM's recommendation" and that JPMS "failed to disclose serious and pervasive risks."  Compl. Ex. 1 (SOC) ¶ 1.  Specifically, Quinnipiac contends that JPMS "failed to disclose its knowledge of the increasing risks that its support bids were propping up the ARS market, and were necessary to achieve the represented interest payments and functionality of the synthetic fixed rate."  *Id.* ¶ 2.  Quinnipiac further alleges that "[o]n or about February 12, 2008, JPM decided to stop submitting support bids for almost all of its lead broker-dealer auctions in the municipal ARS market" and that "Quinnipiac's ARS began to clear over 10% when the SIFMA variable rate hovered around 2% and fixed rates were approximately 4%-5%."  *Id.* ¶ 30.

Quinnipiac asserts five counts: (1) breach of fiduciary duty; (2) violation of FINRA Rules, breach of contract and negligence; (3) negligent supervision; (4) fraud; and (5) negligent misrepresentation.  *Id.* at 14-19.  Quinnipiac's Statement of Claim seeks actual, compensatory, punitive, and consequential damages, along with restitution and disgorgement of fees, and costs.  *Id.* at 19.  Quinnipiac alleges that it is entitled to arbitrate the dispute because it "procured and paid for JPM's services as underwriter and broker-dealer and this dispute arises

from the business activities of JPM, including, but not limited to, underwriting and broker-dealer activities." *Id.* ¶ 7.

The FINRA Arbitration is in its initial stages, as all proceedings have been stayed pursuant to this Court's March 10, 2014 order. JPMS has not filed an answer to Quinnipiac's Statement of Claim; no arbitration panel has been appointed; and the parties have not engaged in any discovery. The only pleading filed in the FINRA Arbitration is Quinnipiac's Statement of Claim.

## LEGAL STANDARD

In the Second Circuit, a party seeking a preliminary injunction must establish "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *VCG*, 598 F.3d at 35 (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). The "likelihood of success" element requires only that the plaintiff convince the Court that it is more likely than not—that is a greater than fifty percent chance—that it will succeed on its claims. *Greenlight Capital, L.P. v. Apple, Inc.*, Nos. 13 Civ. 900(RJS), 13 Civ. 976(RJS), 2013 WL 646547, at *4 (S.D.N.Y. Feb. 22, 2013).

In *Golden Empire*, the Second Circuit considered appeals of two decisions in which this Court enjoined FINRA arbitrations instituted by ARS issuers against the investment banks that served as their underwriters and broker-dealers. In both of the cases reviewed, the District Court had enjoined the arbitration on the basis of a broker-dealer agreement that contained a forum selection clause substantially similar to the one at issue here requiring the parties to litigate their dispute in court. *Golden Empire*, 764 F.3d at 212-13. *Golden Empire*— along with the five decisions of this Court enjoining ARS-related FINRA arbitrations on the

basis of forum selection clauses in the parties' broker-dealer agreements[1]—is consistent with other jurisprudence in this Circuit in which courts have enjoined FINRA arbitrations (or denied motions to compel FINRA arbitrations) rather than require a party to submit to an arbitration where it has not agreed to do so.  *See, e.g.*, *Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011) (holding that an agreement containing a forum selection clause providing "[a]ny dispute arising out of this Agreement shall be adjudicated in the Supreme Court, New York County or in the federal district court for the Southern District of New York," required that the parties' claims be resolved in court and not before FINRA); *Biremis, Corp. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. CV-11-4934 (LDW), 2012 WL 760564 (E.D.N.Y. Mar. 8, 2012); *ProShares Trust v. Schnall*, 695 F. Supp. 2d 76 (S.D.N.Y. 2010).

## I.   JPMS WILL SUFFER IRREPARABLE HARM IF THE MOTION FOR PRELIMINARY INJUNCTION IS DENIED.

JPMS will suffer irreparable harm unless the Court enjoins Quinnipiac from proceeding with the FINRA Arbitration.  "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *see also Int'l Trust Co. of Bermuda, Ltd.* v. *Fahnestock & Co.*, No. 95 Civ. 3865 (KMW), 1995 WL 606275, at *3 (S.D.N.Y. Oct. 12, 1995) ("A party that has not agreed to arbitrate a dispute will suffer

---

[1]   *Goldman, Sachs & Co. v. Golden Empire Schools Fin. Auth.*, 922 F. Supp. 2d 435 (S.D.N.Y. 2013); *Citigroup Global Mkts., Inc. v. N. C. E. Mun. Power Agency*, No. 13-cv-1703 (JMF) (S.D.N.Y. May 10, 2013) (Judgment and Order for a Permanent Injunction) (Dkt. No. 29); *Goldman, Sachs & Co. v. N. C. Mun. Power Agency No. 1*, No. 13-cv-1319(PAC), 2013 WL 6409348 (S.D.N.Y. Dec. 9, 2013); *Citigroup Global Mkts. Inc. v. All Children's Hosp., Inc.*, 5 F. Supp. 3d 537 (S.D.N.Y. 2014); *Citigroup Global Mkts., Inc. v. Mun. Elec. Auth. of Ga.*, No. 14 Civ. 2903 (AKH), 2014 WL 3858509 (S.D.N.Y. June 18, 2014).

irreparable harm if . . . forced to submit to arbitration.").  As a matter of law, there is irreparable harm when a party is "compelled to arbitrate . . . without having agreed to arbitration" because that party is "'forced to expend time and resources arbitrating an issue that is not arbitrable . . . .'"  *UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010) (quoting *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003)).  "[I]t is not merely expense that underlies the prohibition against forcing a party to arbitrate a dispute that it did not agree to arbitrate" but also the concern that a party will "lose its right to have [its] claims adjudicated in a court of law, rather than in an arbitral forum to whose jurisdiction it has not consented."  *Id.*

"Compelling arbitration of a matter not properly subject to arbitration constitutes per se irreparable harm."  *Tellium*, 2004 WL 307238, at *3 (internal quotation marks omitted).  Because JPMS will be compelled to arbitrate a matter that is not properly subject to arbitration, JPMS will suffer irreparable harm if the motion for a preliminary injunction is denied.

## II.     JPMS IS LIKELY TO SUCCEED ON THE MERITS BECAUSE THE DISPUTE IS NOT ARBITRABLE BEFORE FINRA.

A party seeking a preliminary injunction "need not show that success is an absolute certainty.  [The movant] need only make a showing that the probability of [its] prevailing is better than fifty percent.  There may remain considerable room for doubt."  *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), *overruled on other grounds*, *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).  Here, the issue is whether JPMS is likely to succeed in establishing that the forum selection clause in the parties' Broker-Dealer Agreement precludes the parties' dispute from being decided in arbitration.  The Second Circuit's decision in *Golden Empire* along with a plain reading of the forum selection clause in the Broker-Dealer Agreement establishes that JPMS will succeed on the merits of this motion.

A.    **Second Circuit Precedent Establishes That This Dispute Cannot Be Adjudicated In FINRA Arbitration.**

Quinnipiac and JPMS unequivocally agreed that "all actions and proceedings" arising out of Quinnipiac's 2007 ARS issuance would be decided in "a New York State Court or United States District Court, in each case, in the County of New York." The Broker-Dealer Agreement expressly provides:

> The parties agree that ***all actions and proceedings arising out of this Broker-Dealer Agreement or any of the transactions contemplated hereby shall be brought in a New York State Court or United States District Court, in each case, in the County of New York*** and, in connection with any such action or proceeding, submit to the jurisdiction of, and venue in, such County.

Compl. Ex. 5 at 14 (emphasis added).

In *Golden Empire*, the Second Circuit considered whether a substantially similar forum selection clause prohibited ARS issuers from asserting claims against their underwriters and broker-dealers in FINRA. The forum selection clauses at issue in *Golden Empire* provided:

> The parties agree that all actions and proceedings arising out of this Broker-Dealer Agreement or any of the transactions contemplated hereby shall be brought in the United States District Court in the County of New York and that, in connection with any such action or proceeding, submit to the jurisdiction of, and venue in, such court.

764 F.3d at 212. The issue presented in *Golden Empire* concerned whether these forum selection clauses superseded FINRA Rule 12200, which states that FINRA "members 'must arbitrate a dispute' if arbitration is '[r]equested by the customer' and '[t]he dispute arises in connection with the business activities of the member.'" *Id.* at 214 (quoting FINRA Rule 12200). The Second Circuit held that the parties' forum selection clause trumped FINRA Rule 12200, holding that the forum selection clauses "require that disputes arising out of the broker-dealer agreements be adjudicated in the Southern District of New York, and they thus supersede the background FINRA arbitration rule." *Id.* at 216 (citing *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 744 (9th Cir. 2014)).

Each of the two District Court decisions reviewed in *Golden Empire* involved facts nearly identical to those presented here: an ARS issuer brought an arbitration in FINRA pursuant to FINRA Rule 12200 against the investment bank that served as its underwriter and broker-dealer, alleging that the investment bank failed to disclose its practice of placing support bids in ARS auctions.  As such, the Second Circuit, addressing matters that are factually indistinguishable from the present dispute between Quinnipiac and JPMS, has held that the parties' contract specifying court as the forum for adjudicating disputes supersedes a customer's right to request arbitration pursuant to FINRA Rule 12200.  Quinnipiac does not dispute that the *Golden Empire* decision is applicable here.  In a March 6, 2014 letter to this Court, Quinnipiac's counsel stated:

> The issues presented in this Action and JPMS's Motion are substantially similar to the issues presented in two cases previously decided by this Court, *Goldman, Sachs & Co. v. Golden Empire Schools Financing Authority* ("Golden Empire") and *Citigroup Global Markets, Inc. v. North Carolina Eastern Municipal Power Agency* ("NCEMPA"), which are currently proceeding before the United States Court of Appeals for the Second Circuit in the appeals docketed as 13-797 and 13-2247, respectively, with oral argument scheduled for April 4, 2014.

*J.P. Morgan Sec. LLC v. Quinnipiac Univ.*, No. 14 Civ. 429 (PAE), ECF No. 10.  Given the binding precedent from the Second Circuit, JPMS is likely to succeed on the merits.

**B.      A Plain Reading Of The Forum Selection Clause Establishes That
          The Dispute Between Quinnipiac And JPMS Must Be Brought In Court.**

The Broker-Dealer Agreement's forum selection clause provides that "all actions and proceedings arising out of the Broker-Dealer Agreement or any of the transactions contemplated hereby shall be brought in a New York State Court or United States District Court."  Because the FINRA Arbitration falls within "actions and proceedings," and because the dispute "aris[es] out of the Broker-Dealer Agreement or any of the transactions contemplated hereby," the dispute cannot be adjudicated in arbitration and must be brought in court.

1.      **"Actions and Proceedings" Includes The FINRA Arbitration.**

The FINRA Arbitration constitutes an "action" or "proceeding."  In *Golden Empire*, the Second Circuit rejected the notion that "the phrase 'all actions and proceedings' does not include arbitrations."  764 F.3d at 216.  The Second Circuit reasoned that it "must interpret 'all actions and proceedings' based on its plain meaning 'as generally understood' [and a]rbitrations are regularly described as 'proceedings' by the United States Supreme Court, [the Second] Circuit, New York state courts, the C.P.L.R., and the FINRA rules."  *Id.* (citations omitted).  The Second Circuit further stated that the ARS issuers' "own statements of claim before FINRA used the terms 'action' and 'proceeding' to describe the arbitrations they were commencing.  It seems plain that the general understanding of 'actions and proceedings' encompasses arbitrations."  *Id.* at 217.  Similarly, Quinnipiac's Statement of Claim identifies the FINRA Arbitration as a "proceeding" and requests the "costs of prosecuting this action."  Compl. Ex. 1 at 19.  FINRA's rules have also described arbitrations as "proceedings."  *See* FINRA R. 12208 ("At any stage of an arbitration ***proceeding*** held in a United States hearing location, all parties shall have the right to be represented by an attorney . . . .") (emphasis added).  There can be no dispute that the FINRA Arbitration Quinnipiac has brought against JPMS constitutes an "action" or "proceeding."

2.      **The Parties' Dispute Arises Out Of The Broker-Dealer Agreement Or The Transactions Contemplated Therein.**

The parties' dispute "aris[es] out of the Broker-Dealer Agreement or any of the transactions contemplated hereby."  Compl. Ex. 5 (Broker-Dealer Agreement) at 14. Quinnipiac's Statement of Claim is based on JPMS's alleged failure to disclose its practice of placing support bids in ARS auctions.  *See* Compl. Ex. 1 (SOC) ¶ 2 ("JPM failed to disclose its knowledge of the increasing risks that its support bids were propping up the ARS market . . . .").

JPMS placed bids in Quinnipiac's ARS auctions pursuant to its responsibilities as broker-dealer, a relationship governed by the Broker-Dealer Agreement.  In fact, in its Statement of Claim, Quinnipiac expressly states that its claims "arise[] from the business activities of JPM, including, but not limited to, underwriting and broker-dealer activities."  *Id.* ¶ 7.

Furthermore, following the Second Circuit's *Golden Empire* decision, there can be no dispute that the claims Quinnipiac raises in its Statement of Claim are captured in the forum selection clause, regardless of whether those claims concern JPMS's activities as an ARS underwriter or broker-dealer.  In *Golden Empire*, the Second Circuit held that, "the broadly worded forum selection clause encompasses 'all actions and proceedings arising out of . . . any of the transactions contemplated' by the broker-dealer agreements, which plainly include [the] ARS issuances."  764 F.3d at 216.  As in *Golden Empire*, the recitals in the Broker-Dealer Agreement executed by Quinnipiac and JPMS specifically contemplate Quinnipiac's ARS issuance.  Compl. Ex. 5 (Broker-Dealer Agreement) at 1 ("WHEREAS, the State of Connecticut Health and Education Facilities Authority (the 'Issuer') is issuing $116,350,000 in aggregate principal amount . . . .").  Because the FINRA Arbitration falls within "actions and proceedings," and because the dispute "aris[es] out of the Broker-Dealer Agreement or any of the transactions contemplated hereby," the dispute cannot be adjudicated in arbitration and must be brought in court.

## III.     THE BALANCE OF HARDSHIPS TIPS DECIDEDLY TOWARD JPMS.

"The balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided."  *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 922 F. Supp. 2d 435, 444 (S.D.N.Y. 2013) (quoting *Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 411 (S.D.N.Y. 1999)).  Here, JPMS would "suffer most grievously" should this Court not enjoin the FINRA Arbitration.

If the FINRA Arbitration were to proceed, JPMS would be "forced to expend time and resources arbitrating an issue that is not arbitrable." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003).  By contrast, any potential hardship on Quinnipiac is minimal.  Quinnipiac waited nearly six years to bring its claims in the first place and then agreed to a stay pending the issuance of the Second Circuit's mandate in *Golden Empire*.  Accordingly, the balance of hardships tips decidedly toward JPMS.[2]

---

[2]    We understand that in an effort to ask this Court to ignore Second Circuit precedent, Quinnipiac may argue that the 2007 Broker-Dealer Agreement's forum selection clause was affected by the Dodd-Frank Wall Street Reform and Consumer Protection Act's amendment of the Securities Exchange Act of 1934.  Passed in 2010, Dodd-Frank amended § 29(a) of the Exchange Act to prohibit parties from entering into contracts that forced the parties to "waive compliance" with any rule of a self-regulatory organization.  Such an amendment has no effect on the binding forum selection clause at issue here.  The Second Circuit has consistently held that a rule of a self-regulatory organization, like FINRA Rule 12200, can be superseded by a more specific agreement waiving arbitration.  *See Baker & Taylor, Inc. v. AlphaCraze.com Corp.*, 602 F.3d 486, 490 (2d Cir. 2010); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Georgiadis*, 903 F.2d 109, 112-13 (2d Cir. 1990).  The passage of Dodd-Frank in 2010 did nothing to alter this longstanding jurisprudence, and the Second Circuit has continued to uphold the principle that parties' subsequent contract to "adjudicate disputes" in a specific forum supersedes FINRA Rule 12200's requirement that the parties submit to arbitration.  *See Golden Empire*, 764 F.3d at 212; *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 133 (2d Cir. 2011); *Applied Energetics, Inc. v. NewOak Capital Mkts.*, 645 F.3d 522, 525-26 (2d Cir. 2011).  Quinnipiac cannot identify any rule prohibiting the arbitration waiver contained in the Broker-Dealer Agreement, and the validity of this waiver has been consistently upheld in this Circuit.

## CONCLUSION

For the foregoing reasons, JPMS respectfully requests that this Court issue an

order enjoining Quinnipiac from pursuing its claims in the FINRA Arbitration.

Dated:  March 27, 2015                    By:    */s/ Jonathan K. Youngwood*
                                                 Jonathan K. Youngwood
                                                 SIMPSON THACHER & BARTLETT LLP
                                                 425 Lexington Avenue
                                                 New York, NY 10017-3954
                                                 Telephone: (212) 455-2000
                                                 Facsimile: (212) 455-2502
                                                 Email: jyoungwood@stblaw.com

                                                 *Attorneys for Plaintiff J.P. Morgan Securities LLC*

## CERTIFICATE OF SERVICE

I, Kristin Dodson, hereby certify under the penalty of perjury that on

March 27, 2015, I personally served a true and correct copy of the attached:

- **NOTICE OF MOTION FOR PRELIMINARY INJUNCTION**

- **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF J.P. MORGAN SECURITIES LLC'S MOTION FOR PRELIMINARY INJUNCTION**

By Federal Express Overnight Delivery upon:

Joseph C. Peiffer
Peiffer Rosca Abdullah & Carr
201 St. Charles Ave.
Suite 4610
New Orleans, Louisiana 70170

Dated:  New York, New York
        March 27, 2015

Kristin Dodson