USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/22/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

J.P. MORGAN SECURITIES LLC,

                            Plaintiff,

           -v-

QUINNIPIAC UNIVERSITY,

                            Defendant.

------------------------------------------------------------------X

14 Civ. 429 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On December 3, 2013, defendant Quinnipiac University ("Quinnipiac") initiated an arbitration against plaintiff J.P. Morgan Securities LLC ("JPMS") before the Financial Industry Regulatory Authority ("FINRA"). Quinnipiac brought claims arising out of financial losses it claimed to have sustained as a result of its 2007 issuance of auction rate securities ("ARS"), with respect to which JPMS served as underwriter and broker-dealer. Before the Court now is JPMS's motion to preliminarily and permanently enjoin the FINRA arbitration. For the reasons that follow, the Court grants that motion.

## I. Background[1]

### A. Factual Background

In December 2007, Quinnipiac, a university located in Hamden, Connecticut, sought to issue bonds to refinance its prior debt. Quinnipiac Br. 2. Quinnipiac retained JPMS to serve as

---

[1] The following description of the underlying facts relevant to the pending motion is drawn from the Complaint, Dkt. 2 ("Compl."), and attached exhibits; JPMS's brief in support of its motion for a preliminary injunction, Dkt. 17 ("JPMS Br."); and Quinnipiac's brief in opposition to JPMS's motion for preliminary injunction, Dkt. 20 ("Quinnipiac Br.").

its underwriter on the bond issuance and to provide advice on how to structure the refinancing.

*Id.* JPMS recommended that Quinnipiac issue its bonds as ARS. ARS are:

> long-term bonds and stocks whose interest rates or dividend yields are periodically reset through auction. At each auction, holders and buyers of the securities specify the minimum interest rate at which they want to hold or buy. If buy/hold orders meet or exceed sell orders, the auction succeeds. If supply exceeds demand, however, the auction fails and the issuer is forced to pay a higher rate of interest in order to penalize it and to increase investor demand.

*Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 335 (2d Cir. 2011).

On December 1, 2007, Quinnipiac and JPMS signed a Broker-Dealer Agreement, under which JPMS agreed to serve as the broker-dealer for Quinnipiac's ARS. Compl. ¶ 12. The Broker-Dealer Agreement included the following forum-selection clause:

> The parties agree that all actions and proceedings arising out of this Broker-Dealer Agreement or any of the transactions contemplated hereby shall be brought in a New York State Court or United States District Court, in each case, in the County of New York and, in connection with any such actions or proceeding, submit to the jurisdiction of, and venue in, such County.

*Id.*, Ex. 5, at 14. The Broker-Dealer Agreement also contained a merger clause:

> This Broker-Dealer Agreement, and the other agreements and instruments executed and delivered in connection with the issuance of the Bonds, contain the entire agreement between the parties relating to the subject matter hereof, and there are no other representations, endorsements, promises, agreements or understandings, oral, written or inferred, between the parties relating to the subject matter hereof.

*Id.*, Ex. 5, at 13.

On December 20, 2007, Quinnipiac issued $116.35 million in ARS debt, pursuant to an underwriting agreement (the "Purchase Contract") between Quinnipiac and JPMS. *Id.* ¶ 11. Under the Purchase Contract, JPMS agreed to buy a portion of the bonds and resell them to interested investors. *Id.*, Ex. 6.

Quinnipiac claims that JPMS failed to disclose to Quinnipiac that JPMS, for the bonds for which it served as lead underwriter, had a practice of placing supporting bids in auctions,

2

and that without these supporting bids, the auctions would fail, and the ARS market would collapse, thereby injuring Quinnipiac.  *Id.*, Ex. 1, at 11.  On February 12, 2008, Quinnipiac alleges, JPMS and other broker-dealers stopped placing supporting bids in municipal ARS auctions, revealing insufficient investor demand for ARS, and that, as a result, the interest rate that Quinnipiac was obliged to pay on its ARS rose, eventually costing Quinnipiac approximately $20 million in damages.  *Id.* at 12.

### B. The FINRA Arbitration Brought by Quinnipiac

On December 3, 2013, Quinnipiac filed a Statement of Claim against JPMS with FINRA.  *Id.* ¶ 17; *see also id.*, Ex. 1.  Under FINRA Rule 12200, FINRA members and their customers "must arbitrate a dispute . . . [i]f [a]rbitration . . . is . . . [r]equested by the customer; [t]he dispute is between a customer and a [FINRA] member . . . ; and [t]he dispute arises in connection with the business activities of the member."  Quinnipiac brought claims against JPMS for breach of fiduciary duty, fraud, breach of contract, negligence, negligent supervision, negligent misrepresentation, and violation of FINRA's rules.  *See* Compl., Ex. 1.  It seeks more than $20 million in damages, reflecting, *inter alia*, the additional interest payments it was compelled to pay and refinancing costs.  *Id.*

### C. JPMS's Lawsuit Seeking to Enjoin the FINRA Arbitration

On January 23, 2014, six days before the deadline for JPMS to answer Quinnipiac's Statement of Claim in the FINRA arbitration, JPMS filed its Complaint in this Court.  JPMS's Complaint seeks an injunction preventing Quinnipiac from pursuing the FINRA arbitration and a declaratory judgment that, as a result of the forum-selection clause in the parties' Broker-Dealer Agreement, FINRA lacks jurisdiction over the FINRA arbitration.  Dkt. 2.

On February 14, 2014, JPMS filed a motion for a preliminary injunction of the FINRA arbitration. Dkt. 5–7. On March 4, 2014, the case was assigned to this Court, and on March 5, 2014, the Court set a briefing schedule for JPMS's preliminary injunction motion. Dkt. 8.

On March 7, 2014, the parties submitted a joint letter, asking the Court to adjourn the preliminary injunction briefing schedule in light of two cases then pending before the Second Circuit. Dkt. 10. The parties explained that:

> The issues presented in this Action and JPMS's Motion are substantially similar to the issues presented in two cases previously decided by this Court, *Goldman, Sachs & Co. v. Golden Empire Schools Financing Authority* ("Golden Empire") and *Citigroup Global Markets, Inc. v. North Carolina Eastern Municipal Power Agency* ("NCEMPA"), which are currently proceeding before the United States Court of Appeals for the Second Circuit in the appeals docketed as 13-797 and 13-2247, respectively, [and] . . . [b]ecause the Second Circuit's resolution of the above-mentioned appeals may be determinative of some or all of the issues presented in this Action and JPMS's Motion, the Parties believe that it would be prudent to forgo the expenditure of additional party or judicial resources until the Second Circuit has spoken.

*Id.* at 2. On March 10, 2014, the Court granted the parties' request for a stay until the Second Circuit's issuance of a mandate in either *Golden Empire* or *NCEMPA*. Dkt. 11.

On August 21, 2014, the Second Circuit issued a single opinion resolving both the *Golden Empire* and *NCEMPA* appeals. In each case, the Second Circuit affirmed the district court's grant of a preliminary injunction enjoining the FINRA arbitration. *See Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210 (2d Cir. 2014) (hereinafter, "*Golden Empire*"). The Second Circuit held that in each case, "the FINRA arbitration rules have been superseded by forum selection clauses requiring 'all actions and proceedings' related to the transactions between the parties to be brought in court." *Id.* at 212. On March 18, 2015, the Second Circuit issued its mandate in *Golden Empire*.

On March 24, 2015, JPMS asked this Court, in light of the *Golden Empire* mandate, to return this case to the Court's active docket. Dkt. 15. On March 27, 2015, JPMS filed an updated motion for a preliminary injunction, Dkt. 16, and a supporting brief, heavily relying on the Second Circuit's decision in *Golden Empire*. Dkt. 17 ("JPMS Br."). On March 30, 2015, the Court returned the case to its active docket and set a briefing schedule for JPMS's motion for a preliminary injunction. Dkt. 18. On April 27, 2015, Quinnipiac filed its brief in opposition to that motion. Dkt. 20 ("Quinnipiac Br."). On May 12, 2015, JPMS filed its reply. Dkt. 21 ("JPMS Reply Br.").

On May 19, 2015, the Court heard argument. *See* Dkt. 23. At argument, both parties agreed that the issue presented to the Court is solely one of law, such that, were the Court to grant a preliminary injunction on the ground that the parties' forum-selection clause precludes the FINRA arbitration from going forward, it would also be appropriate to grant a permanent injunction and close this case. Quinnipiac, in fact, urged this outcome, so as to enable it promptly to appeal.

## II.     Applicable Legal Standards

To obtain a preliminary injunction in the Second Circuit, a party must demonstrate: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). "To obtain a permanent injunction, a party must establish three things: (1) success on the merits; (2) the lack of an adequate remedy at law; and (3) irreparable harm if relief is not granted." *UBS Securities, LLC v. Voegeli*, 405 F. App'x 550, 551 (2d Cir. 2011) (summary order) (citing *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006)).

### III.     Discussion

#### A.     Likelihood of Success on the Merits

As noted, the Court initially stayed this action pending the Second Circuit's resolution of the appeals in *Golden Empire* and *NCEMPA*, which the parties agreed raised "substantially similar" issues to those presented here.  Dkt. 10, at 2.  In *Golden Empire*, the Second Circuit resolved those appeals, holding that the contractual forum-selection clauses at issue superseded FINRA Rule 12200.  764 F.3d at 217.  The forum selection clauses at issue in those cases are substantially similar to the one at issue here,[2] and the parties agree that the facts of the two cases resolved in *Golden Empire* are factually indistinguishable from those here.

JPMS accordingly argues that it is likely to succeed on the merits of its bid for a permanent injunction blocking FINRA on the basis of the decision in *Golden Empire*.  JPMS Br. 10–14.  JPMS therefore asks this Court to join several other courts in this District, which have upheld forum-selection clauses where Rule 12200 would otherwise apply.  *See Citigroup Global Mkts., Inc.  v. Mun. Elec. Auth. of Ga.*, No. 14 Civ. 2903 (AKH), 2014 WL 3858509 (S.D.N.Y. June 18, 2014); *Citigroup Global Mkts., Inc. v. All Children's Hosp., Inc.*, 5 F. Supp. 3d 537 (S.D.N.Y. 2014); *Goldman, Sachs & Co. v. N.C. Mun. Power Agency No. 1*, No. 13 Civ. 1319 (PAC), 2013 WL 6409348 (S.D.N.Y. Dec. 9, 2013); *Citigroup Global Mkts., Inc. v. N.C.*

---

[2] The forum-selection clauses at issue in *Golden Empire* stated that "all actions and proceedings" would be brought in the "United States District Court in the County of New York," 764 F.3d at 212, while the forum-selection clause in this case requires that "all actions and proceedings" be brought in a "New York State Court or United States District Court, in each case, in the County of New York," Compl., Ex. 5, at 14.

*E. Mun. Power Agency*, No. 13 Civ. 1703 (JMF), Dkt. 29 (S.D.N.Y. May 10, 2013); *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d 435 (S.D.N.Y. 2013).

In its opposition, Quinnipiac largely ignores the Second Circuit's decision in *Golden Empire*. Instead, Quinnipiac, raising what it claims is an argument not considered by the Second Circuit in that case, argues that Section 29(a) of the Securities Exchange Act of 1934 (the "Exchange Act") prevented the parties from agreeing to a forum-selection clause that would supervene FINRA's mandatory arbitration rule, Rule 12200. Section 29(a) provides that "[a]ny condition, stipulation, or provision binding any person to waive compliance with . . . any rule of a self-regulatory organization, shall be void." 15 U.S.C. § 78cc. Quinnipiac argues that Section 29(a), an "anti-waiver provision," obliges the Court to find that FINRA's rules, including Rule 12200, are unwaivable. Quinnipiac Br. 5, 8–11; *see also id.* at 9 (citing *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 228 (1987) ("What the antiwaiver provision of § 29(a) forbids is the enforcement of agreements to waive 'compliance' with the provisions of the statute.")). Quinnipiac acknowledges that the same logic would equally have applied in *Golden Empire*, but it distinguishes *Golden Empire* on the ground that the Second Circuit in *Golden Empire* did not consider Section 29(a).

The Court is unpersuaded, for two reasons.

First, *Golden Empire* is controlling precedent on this issue. And contrary to Quinnipiac's claim that the Second Circuit did not consider Section 29(a), the record of the appeals in *Golden Empire* and *NCEMPA* reflect that the parties *did* draw Section 29(a) to the Second Circuit's attention.

Specifically, in post-argument letters submitted pursuant to Federal Rule of Appellate Procedure 28(j), the parties in *Golden Empire* and *NCEMPA* addressed the recent decision by

FINRA's Board of Governors in *Department of Enforcement v. Charles Schwab & Co.*, 2014 WL 1665738. *See Golden Empire*, No. 13-797, Dkt. 113, 115 (2d Cir. 2014); *NCEMPA*, No. 13-2247, Dkt. 90, 95 (2d Cir. 2014). The Board of Governors there discussed the decision in *Shearson/American Express, Inc. v. McMahon*, including the Supreme Court's statement that Section 29(a) "only prohibits waiver of the *substantive* obligations imposed by the Exchange Act." 2014 WL 1665738, at *19 (quoting *McMahon*, 482 U.S. at 228) (emphasis added). Based on *McMahon*, the appellees in *Golden Empire* and *NCEMPA* argued in their Rule 28(j) letters that Section 29(a) does not prevent parties otherwise subject to Rule 12200 from negotiating a clause selecting a judicial forum. Indeed, in their letter, appellees' counsel noted that, during argument before the Circuit, the appellants had expressly conceded that the parties *could* contract around Rule 12200's default provision of arbitration. *See* Dkt. 115, at 2.

In light of this history, the Second Circuit's decision in *Golden Empire* cannot be cast aside as Quinnipiac proposes. Although the decision in that case did not overtly address Section 29(a), it is clear that the Second Circuit, in holding that a forum-selection clause could prevail over Rule 12200, was cognizant of that statutory provision and did not find it determinative.[3]

Second, considered de novo on its merits, Quinnipiac's argument based on Section 29(a) is unpersuasive, as the anti-waiver provision is not rightly read to void the forum-selection clause. As the Supreme Court recognized in *McMahon*, Section 29(a) "only prohibits waiver of the substantive obligations imposed by the Exchange Act." 482 U.S. at 228. It is addressed to

---

[3] The same argument based on Section 29(a) was also raised in *Citigroup Global Markets, Inc. v. Municipal Electric Authority of Georgia*, No. 14 Civ. 2903 (AKH), 2014 WL 3858509 (S.D.N.Y. June 18, 2014). Opposing an application to enjoin a FINRA arbitration, the defendant argued that Section 29(a) prevented the Court from enforcing the parties' forum-selection clause. *See id.*, Dkt. 12, at 7–8 (S.D.N.Y. May 30, 2014). Judge Hellerstein nevertheless granted plaintiff's preliminary injunction motion. *See id.*, 2014 WL 3858509, at *1.

8

the circumstance in which an "agreement 'weaken[s] [a party's] ability to recover under the [Exchange] Act.'" *Id.* at 230 (quoting *Wilko v. Swan*, 346 U.S. 427, 432 (1953)).

An agreement addressed to procedural issues, including forum selection, cannot be so described. Indeed, for this very reason, in *McMahon*, the Supreme Court held that Section 29(a) does not prohibit parties from together waiving Section 27 of the Exchange Act, which confers on district courts exclusive jurisdiction over Exchange Act violations, but which, the Court recognized, is not a source of substantive duties. *Id.* at 220–21. It follows from *McMahon* that the parties' forum-selection agreement here similarly took precedence over FINRA Rule 12200, because "a rule governing the forum in which disputes are to be heard is not the type of 'substantive obligation' whose waiver could be deemed void under [the anti-waiver provision]." *Credit Suisse Secs. (USA) LLC v. Tracy*, No. 14 Civ. 8568 (NRB), 2015 WL 170241, at *7 (S.D.N.Y. Jan. 8, 2015); *see also Roney & Co v. Goren*, 875 F.2d 1218, 1220–21 (6th Cir. 1989); *Adelson v. World Transp., Inc.*, 631 F. Supp. 504, 507 (S.D. Fla. 1986).

The Court accordingly finds that JPMS has demonstrated not only a likelihood of success, but indeed that its legal position is clearly correct on the merits.[4]

---

[4] Even if this were not so, a party seeking a preliminary injunction in this Circuit alternatively may prevail if it can demonstrate "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Markets, Inc.*, 598 F.3d at 35. "The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Id.* That standard is also met here. As noted, JPMS has amply demonstrated "serious questions" on the merits, and Quinnipiac does not dispute that the balance of hardships favors JPMS.

### B.   Irreparable Injury

JPMS will suffer irreparable harm without a preliminary injunction in this case.  "As a matter of law, there is irreparable harm when a party is 'compelled to arbitrate . . . without having agreed to arbitration' because that party is 'forced to expend time and resources arbitrating an issue that is not arbitrable.'"  *NASDAQ OMX Group, Inc. v. UBS Secs. LLC*, No. 13 Civ. 2244 (RWS), 2013 WL 3942948, at *12 (S.D.N.Y. June 18, 2013) (quoting *UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010)).[5]  Quinnipiac does not contest that JPMS will suffer irreparable harm, and the Court thus finds that this requirement is satisfied.

### C.   The Balance of Hardships

JPMS also has established that the balance of hardships favors it, a point Quinnipiac does not dispute.  "The balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided."  *Golden Empire*, 992 F. Supp. 2d at 444 (quoting *Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 411 (S.D.N.Y. 1999)) (internal quotations omitted).  Here, JPMS would be "forced to expend time and resources arbitrating an issue that is not arbitrable."  *Optibase*, 337 F.3d at 129 (2d Cir. 2003).  Quinnipiac, on the other hand, does not assert that it would suffer any potential hardship, and Quinnipiac is at liberty to appeal this adverse decision to the Second Circuit.  Accordingly, the Court finds, the balance of hardships decidedly favors JPMS.

---

[5] As to JPMS's motion for a permanent injunction, "[b]eing forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law."  *Voegeli*, 405 F. App'x at 552 (citing *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (per curiam).  The Court thus finds that JPMS satisfies the "irreparable harm" and "lack of adequate remedy at law" requirements for a permanent injunction.

## CONCLUSION

For the foregoing reasons, the Court grants JPMS's motion for a preliminary and for a permanent injunction.

The Clerk of Court is respectfully directed to terminate the motion pending at docket number 16 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: May 22, 2015
      New York, New York